UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
FTEMA RAYSOR,                                       :
                                                    :
                            Plaintiff,              :
                                                    :         **REPORT &**
           -against-                                :         **RECOMMENDATION**
                                                    :
POLICE OFFICER TROY ANN SAFI,                       :         19-CV-6265 (DG)(MMH)
                                                    :
                            Defendant.              :
                                                    :
-------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

In 2019, *pro se* Plaintiff Ftema Raysor filed this action against New York Police Department ("NYPD") Officer Troy Ann Safi and others, alleging injury and seeking damages related to her arrest on November 2, 2017 (the "Incident"). (*See generally* Compl., ECF No. 1.)[1] In a Second Amended Complaint ("SAC") against Safi only, Plaintiff alleges that Safi falsely arrested her and used excessive force against her, in retaliation for her protected speech and in violation of 42 U.S.C. § 1983. (*See generally* SAC, ECF No. 15.) Before the Court is Safi's motion for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56. (*See generally* Def.'s Mot., ECF No. 96.) For the reasons stated below, the Court respectfully recommends that Safi's motion should be **denied**.

**I.    BACKGROUND**

The Court has considered the parties' declarations, attached exhibits, and Safi's Local Civil Rule 56.1 Statement of Facts (ECF No. 100.) The Court must and will construe the facts in the light most favorable to the nonmoving party. *See Capobianco v. City of New York*, 422

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "Document ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, the parties consider the following facts undisputed, or the opposing party has not proffered evidence in the record to dispute them.[2]

A. **Facts**

The following facts are undisputed. Safi is an NYPD Officer and has been since March 2022. (Def.'s Decl., ECF No. 98 ¶ 1.) On November 2, 2017, Safi was working a security post at Brooklyn Borough Hall ("Borough Hall"), the location of the Office of the Borough President. (*See* Def.'s R. 56.1 Stmt., ECF No. 100 ¶¶ 1–2.) At approximately 9:00 a.m. that day, Plaintiff entered the lobby to drop off flyers for an event she was planning. (*See* Pl.'s Dep., ECF No. 111 at 28:22–29:8.)[3] At some point before November 2, 2017, however, Plaintiff was placed on a "Do Not Admit" list at Borough Hall. (Def.'s Decl., ECF No. 98 ¶ 4.)

In that lobby, Safi recognized Plaintiff from previous interactions. (*Id.* ¶ 5.) Plaintiff also recalled seeing Safi at Borough Hall on other occasions. (*See* Pl.'s Dep., ECF No. 111 at 157:19–158:12.) Safi attempted to remove Plaintiff from the building and radioed for the assistance of additional officers. (Def.'s Decl., ECF No. 98 ¶¶ 10–12.) Plaintiff was

---

[2] Defendant submits a Local Civil Rule 56.1 Statement (ECF No. 100) a declaration dated January 30, 2025 (ECF No. 98), and three exhibits (ECF Nos. 97-1, 98-1, 111). *See* Loc. Civ. Rs. 56.1(a), (d). Plaintiff has not filed a Rule 56.1 counterstatement and her response refers to documents previously submitted. (*See* Pl.'s Resp., ECF No. 104 at 1, 3–4 (citing Nov. 18, 2024 Ltr., ECF No. 91 at 6, 8, 10).) A party opposing summary judgment, including a *pro se* party, must respond to each paragraph of the movant's Rule 56.1 statement or else the movant's statements will be deemed admitted. Loc. Civ. Rs. 56.1(b)–(c); *see Corral v. Arrow Elecs., Inc.*, No. 16-CV-04636 (JMA)(JMW), 2024 WL 4120442, at *9 (E.D.N.Y. May 9, 2024) (citing *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)) ("Nonetheless, a *pro se* party is required to follow the requisites of [Local Civil] Rule 56.1."), *adopted by* 2024 WL 3823492 (E.D.N.Y. Aug. 15, 2024). However, the Court relies on Defendant's Rule 56.1 Statement only where the record supports the statements contained therein. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 421 (S.D.N.Y. 2014).

[3] Citations to depositions are to the page and line numbers on the deposition transcript.

handcuffed and transported to the 84th Precinct where she was issued summonses for trespass and disorderly conduct. (*Id.* ¶¶ 14–15; *see generally* Summonses, ECF No. 98-1.)

The parties disagree about specific details relating to Safi's initial encounter with Plaintiff during the Incident. Safi testified that, when Plaintiff entered the lobby of Borough Hall, she informed Plaintiff that she was on a "Do Not Admit List, did not have permission to be on the premises, and could not go any further into the building." (Def.'s Decl., ECF No. 98 ¶ 6.) Safi asked Plaintiff to leave and Plaintiff began screaming, alarming other staff members in the building. (*Id.* ¶ 8.) Safi purportedly asked Plaintiff to leave for a second time and began escorting her from the building. (*Id.* ¶ 10.) Safi claims that Plaintiff physically resisted, and Safi radioed for the assistance of additional officers. (*Id.* ¶ 12.) After Plaintiff was arrested, she was taken to the police precinct and issued criminal summonses. (*Id.* ¶¶ 13–15.)

According to Plaintiff, on the date of the Incident, she went to Borough Hall to drop off flyers for an event she was organizing called Brooklyn Spa Day. (*See* Pl.'s Dep., ECF No. 111 at 21:1–10, 21:20–22:4). Plaintiff avers that a female event planning staff member—whose name Plaintiff could not recall—sent an email instructing her to come by to drop off the flyers. (*See id.* at 22:25–23:9; 25:22–26:7.) Plaintiff testifies that she had been to Borough Hall numerous times before November 2, 2017 for various events and for meetings with staff members concerning the Spa Day event. (*See id.* at 22:2–8, 24:11–24:20.) Plaintiff had observed Safi working at Borough Hall during her previous visits but never had any physical or verbal interactions with her. (*See id.* at 157:19–158:12.). Plaintiff arrived at Borough Hall at approximately 9:00 a.m., intending to deposit the flyers with someone at the front desk and leave. (*See id.* at 29:3–25.)

3

As soon as Plaintiff entered the lobby, Safi approached her and, without forewarning or provocation, began choking her with the scarf Plaintiff was wearing, stating "[y]ou're not going home today. You're going to jail." (*See id.* at 30:11–23; 33:6–18; 34:13–15; 36:9–25, 66:18–67:11.)[4] At the same time, Safi tore Plaintiff's bracelet off her wrist and started taking items out of her bag. (*See id.* at 30:11–19, 36:20–23, 83:3–9.). After the scarf ripped, Safi called for backup and continued to restrain Plaintiff by "grabbing [her] body . . . [a]ny place she could touch" until other officers arrived. (*Id.* at 89:12–17.) Plaintiff testified that she did not resist Safi but told her "[y]ou don't know who I know and I think you need to stop doing this before I sue you guys" and mentioned her relationships with public officials including the Mayor of the City of New York, which Plaintiff believes angered Safi. (*See id.* at 67:10–68:3, 89:22–24.). Plaintiff testifies that her interaction with Safi lasted approximately five minutes. (*See id.* at 88:7–24.) After other officers arrived, Plaintiff had no further physical interactions with Safi. (*See id.* at 54:5–14.)

Additional officers arrived, with an initial two officers responding from a nearby police car, followed by a van with four more officers, followed by two more officers from another car. (*See id.* at 38:8–39:9, 41:22–42:12, 46:15–47:5, 51:19–52:14, 70:10–71:10.) The two initial officers handcuffed Plaintiff and took her out of the front door of Borough Hall to a corner on the side of the building directly underneath multiple cameras. (*See id.* at 52:9–53:22, 56:19–25, 70:10–71:20.) The officers cut her bag off with scissors and began kicking her, causing a glass bottle she was carrying to break and cut her hand. (*See id.* at 57:17–58:6.) By

---

[4] Apart from these statements, Safi purportedly said nothing else to Plaintiff during the Incident. (*See* Pl.'s Dep., ECF No. 111 at 36:9–19.)

4

this point, the four additional officers from the van had arrived and joined in on the kicking. (*See id.* at 71:18–72:5.) Plaintiff claims this first beating outside lasted approximately 15 minutes. (*See id.* at 72:6–13.) Then, the six officers dragged Plaintiff back inside of the lobby of Borough Hall, where they continued to kick her and subjected her to an "illegal chokehold." (*See id.* 59:2–23, 63:2–24, 72:14–24, 74:22–75:23.) This second beating inside lasted another fifteen minutes. (*See id.* at 72:8–18).

Plaintiff was then taken to the NYPD's 84th Precinct. (*See id.* at 65:12–21, 80:6–25.) At the precinct, Safi tried to persuade her not to pursue a lawsuit, claiming the Incident was a mistake. (*See id.* at 41:2–21, 50:4–13, 83:14–24.) When Plaintiff refused, Safi issued her criminal summonses which Plaintiff contends were false and later thrown out by a judge. (*See id.* at 85:16–22.) After being issued the summonses, Plaintiff was released from custody. (*See id.* at 87:15–17.)

Plaintiff claims to have suffered varying injuries because of the Incident. Plaintiff states that the Incident resulted in her being placed on a "Do Not Enter" list for Borough Hall and other public buildings in New York, hindering her ability to pursue her career and community activities. (*See id.* at 39:22–40:17, 68:12–14, 90:24–91:25.)[5] This, coupled with an event planning staff member speaking poorly about her to sponsors and insurance companies, caused her to lose her sponsors and event insurance, effectively ending her event planning business. (*See id.* at 90:24–91:19, 135:24–140:17.) Plaintiff attributes certain

---

[5] Plaintiff testifies that she did not learn she was on a Do Not Admit list at Borough Hall until after the Incident, when she attempted to return to Borough Hall for a meeting with the Brooklyn Borough President and learned that Safi had had placed her on the list. (*See* Pl.'s Dep., ECF No. 111 at 156:9–157:9.)

5

psychological injuries to her interaction with Safi, including depression and sexual dysfunction. (*See id.* at 125:10–128:21.)[6]

### B.  Procedural History

The Court extensively described the procedural history of this action in a prior Report and Recommendation and incorporates that recitation herein. (Aug. 30, 2022 Rep. & Rec. ("R. & R."), ECF No. 58 at 2–5.) In sum, in October 2018, Plaintiff (through counsel) sued Safi and other NYPD officers in state court, alleging Section 1983 unlawful search and seizure, assault and battery, and other claims. (*Id.* at 2 (citing *Raysor v. City of New York*, Index No. 521486/2018 ("*Raysor I*").)

Approximately one year later, Plaintiff, proceeding *pro se*, commenced the instant action on November 1, 2019 against the City and the same defendants in *Raysor I*, alleging violations of her Fourteenth Amendment rights and a federal criminal statute, 18 U.S.C. § 242. (*See generally* Compl., ECF No. 1.) The Court twice *sua sponte* dismissed Plaintiff's *pro se* pleadings because they failed to state a claim for relief, and granted Plaintiff leave to amend. (R. & R. at 3–4 (citing Nov. 20, 2019 Mem. & Order, ECF No. 4 & Jan. 30, 2020 Mem. & Order, ECF No. 8).) In the SAC filed on December 29, 2020, Plaintiff alleges that the City, Safi, and unidentified NYPD officers violated her rights in relation to her arrest, in violation of Section 1983, causing injury for which she seeks damages. (*See* SAC, ECF No. 15 at 4.) The Court *sua sponte* dismissed the claims against the City and the unidentified officers, but liberally construed the remaining allegations as plausible false arrest and excessive force

---

[6] Plaintiff initially stated that she attributes all her injuries—"[her] head, [her] back, [her] neck, mental distress, [and] lost wages"—to her interaction with Safi, but later stated that her leg, head, and back injuries were not caused by Safi but by the other officers. (*See id.* at 90:19–23, 107:25–110:12.)

6

claims against Safi and ordered service of the Complaint. (*See* R. & R. at 4–5 (citing Jan. 21, 2021 Mem. & Order, ECF No. 16 at 7–9).)[7] Safi answered the SAC on September 27, 2021. (Answer, ECF No. 29.)

Safi moved to dismiss pursuant to Rule 12(b)(1) on January 7, 2022, arguing that the Court should abstain from exercising jurisdiction over this action. (*See generally* Mot. Dismiss Mem., ECF No. 46 (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River*").) Judge Gujarati referred the motion to dismiss for report and recommendation. (*See* Mar. 9, 2022 Order Ref. Mot.) On August 30, 2022, the Report and Recommendation recommended dismissal of the SAC without prejudice. (*See* R. & R., ECF No. 58 at 9–22.) Judge Gujarati adopted the Report and Recommendation's analysis but exercised discretion to deny the motion to dismiss. (*See* Mar. 14, 2023 Order Adopting in Part R. & R.)

Following the disposition of the motion to dismiss, the Court presided over discovery. (*See, e.g.*, May 24, 2023 Min. Entry (directing the parties to exchange initial disclosures and discovery demands); Oct. 16, 2023 Min. Entry (directing Plaintiff to provide written responses to interrogatories and to execute medical releases); Nov. 17, 2023 Min. Entry (discussing additional medical releases and Plaintiff's supplemental responses to Safi's interrogatories);

---

[7] The January 21, 2021 Memorandum and Order states that the SAC alleges "violations of [Plaintiff's] First, Fourth, and Fourteenth Amendment Rights," "plausibly allege[s] that Officer Safi falsely arrested Plaintiff and used excessive force against her for exercising her First Amendment rights," and "makes out a plausible Section 1983 claim based on Plaintiff's claims of false arrest and excessive force against Officer Safi." (Jan. 21, 2021 Mem. & Order, ECF No. 16 at 3, 6–7, 9.) The Court interprets this Memorandum and Order as construing claims for: (1) unnecessary force and arrest in retaliation to Plaintiff's protected speech, in violation of the First and Fourteenth Amendments; (2) false arrest in violation of the Fourth and Fourteenth Amendments; and (3) excessive force in violation of the Fourth and Fourteenth Amendments.

Dec. 20, 2023 Min. Entry; May 31, 2024 Min. Entry (ordering Plaintiff's deposition); Sept. 18, 2024 Min. Entry (addressing outstanding document discovery issues).) After Plaintiff's deposition, she stated her intention to not engage in further discovery, and discovery closed on October 30, 2024. (Sept. 18, 2024 Min. Entry; *see also* Oct. 30, 2024 Min. Entry.) The Court directed the parties to discuss settlement, but the parties did not reach an agreement. (*See* Dec. 4, 2024 Order.)

Safi filed the instant motion on January 31, 2025. (Def.'s Mot., ECF No. 96.) Following one extension, Plaintiff responded in opposition. (*See* Mar. 11, 2025 Order; Pl.'s Resp., ECF No. 104.). Safi replied in further support of her motion on April 18, 2025. (*See* Def.'s Reply, ECF No. 107.). Judge Gujarati referred the motion for report and recommendation. (*See* Feb. 26, 2025 Order Ref. Mot.) In response to the Court's directive, Safi submitted supplemental materials on August 25, 2025. (Aug. 22, 2025 Order; Def.'s Supp., ECF No. 111.)

## II.    LEGAL STANDARDS

### A.    Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (cleaned up). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom

8

summary judgment is sought." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (cleaned up).

"If the moving party carries its initial burden, the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (cleaned up). "[R]ather than merely deny the moving party's allegations in a general way, [however,] the party opposing summary judgment must present competent evidence that creates a genuine issue of material fact." *Id.* (cleaned up); *see also* Fed. R. Civ. P. 56(e).

### B.    Section 1983

Under Section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]" 42 U.S.C. § 1983. To maintain a Section 1983 claim, a plaintiff must show that (1) the person who committed the complained-of conduct acted under color of state law and (2) that conduct must have deprived the plaintiff of rights under the Constitution or federal laws. *Keles v. Davalos*, 642 F. Supp. 3d 339, 361 (E.D.N.Y. 2022) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Corrow v. Nassau Cnty. Corr. Ctr.*, No. 24-CV-7187 (NJC)(LGD), 2025 WL 580358, at *3 (E.D.N.Y. Feb. 23, 2025) (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

### C.    Pro Se Submissions

The submissions of a *pro se* litigant are "construed liberally and are treated as raising the strongest arguments that they might suggest." *Johnson v. Buffalo Police Dep't*, 46

9

F. App'x 11, 12 (2d Cir. 2002); *see also John-Cedeno v. N.Y.C. Health + Hosps. Corp.*, No. 22-CV-7959 (RPK)(MMH), 2025 WL 2432047, at *3 (E.D.N.Y. Aug. 22, 2025) ("A court is 'ordinarily obligated to afford a special solicitude to *pro se* litigants . . . particularly where motions for summary judgment are concerned.'") (quoting *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016)). "*Pro se* status, however, 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *John-Cedeno*, 2025 WL 2432047, at *3 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)). Where a party is proceeding *pro se*, the Court must "examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate" whether or not addressed in the party's opposition papers. *Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014).

## III. DISCUSSION

The SAC alleges that Safi violated 42 U.S.C. § 1983 by falsely arresting Plaintiff and using excessive force against her. (*See* Mem. & Order, ECF No. 16 at 7–9.)[8] With respect to the false arrest claim, Safi argues that (1) her arrest of Plaintiff was justified by probable cause; and (2) even if Safi lacked probable cause to arrest Plaintiff, she is entitled to qualified immunity on this claim. (*See* Def.'s Mot., ECF No. 101 at 8–9.) Safi also argues that she did

---

[8] Safi moves for summary judgment on Plaintiff's Fourth Amendment false arrest and excessive force claims. (*See* Def.'s Mem., ECF No. 101 at 8–11.) Because Safi does not address Plaintiff's First Amendment claims, the Court does not address them here. *See Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, No. 16-CV-4254 (KPF), 2019 WL 1300335, at *16 n.14 (S.D.N.Y. Mar. 21, 2019) ("As Plaintiff's opening brief did not make this argument or move for summary judgment on this claim, the Court will not address it."); *Scottsdale Ins. Co. v. Bo Steel Grp., Inc.*, No. 14-CV-7318 (AMD)(VMS), 2018 WL 7223724, at *1 n.1 (E.D.N.Y. July 2, 2018) ("The plaintiff's complaint included an additional claim for declaratory judgment. Because the plaintiff does not raise this claim in its motion for summary judgment, I do not address it.") (internal citation omitted).

10

not use excessive force against Plaintiff as a matter of law because Plaintiff suffered no physical injuries from Safi's conduct. (*See id.* at 10–11.) Liberally construed, Plaintiff's response contends that she suffered psychological injuries because of Safi's conduct and harm to her livelihood because of the Incident. (*See generally* Pl.'s Resp., ECF No. 104.)[9] As discussed below, summary judgment should be denied for both claims.

### A. False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." *Kee*, 12 F.4th at 158 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "In New York, to prevail on a false arrest claim, a plaintiff must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (quoting *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003)).

"An arrest is privileged if it is based on probable cause, for probable cause is a complete defense to a false arrest claim." *Id.* (citing *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016)). "Officers have probable cause when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."

---

[9] Plaintiff's response to Safi's motion does not specifically address any of the arguments raised in support of the motion. Instead, Plaintiff complains of Defendant's unwillingness to engage in meaningful settlement discussions and the hardships she has experienced as a result of this lawsuit. (*See* Pl.'s Resp., ECF No. 104 at 1–3.)

11

*Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (cleaned up).  Probable cause is assessed objectively and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (quoting *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004)).  "If there is probable cause to arrest a plaintiff 'for *any* crime—whether or not that particular crime was closely related to the offense the officers said was the reason for the arrest'—then a plaintiff cannot prevail." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (quoting *Kee*, 12 F.4th at 158–59)).

1. **Probable Cause**

Although Safi issued three summons to Plaintiff (two for disorderly conduct), Safi argues only that she had probable cause to arrest Plaintiff for trespassing.  (*See* Def.'s Mem., ECF No. 101 at 8.)  Under New York law, "[a] person is guilty of trespass when [she] knowingly enters or remains unlawfully in or upon premises."  N.Y. Penal Law § 140.05.  A person "enters or remains unlawfully" in or upon premises when he is not licensed or privileged to do so. *Id.* § 140.00(5).  "Where the premises 'are at the time open to the public,' however, a person 'remains unlawfully' if 'he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.'" *Yorzinski v. City of New York*, 175 F. Supp. 3d 69, 77 (S.D.N.Y. 2016) (quoting N.Y. Penal Law § 140.00(5)).[10]

---

[10] The parties do not address whether Borough Hall is generally open to the public.  Viewing the evidence in the light most favorable to Plaintiff, the Court assumes that it is.

"Where, as here, the alleged trespass occurred on premises generally open to the public, the State has the burden of proving three elements to support a prima facie case of criminal trespass: (1) that a lawful order excluding the defendant from the premises was issued, (2) that the order was communicated to the defendant by a person with authority to make the order, and (3) that the defendant defied that order." *See Carpenter v. City of New York*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) (citing *People v. Munroe*, 853 N.Y.S.2d 457, 458 (N.Y. Sup. App. Term 2007)).  Therefore, Safi would have had probable cause to arrest Plaintiff for trespassing at Borough Hall if Safi had been informed that Plaintiff was not allowed on the premises and Plaintiff refused orders to leave. *See Rodriguez v. City of New York*, No. 11-CV-775 (DLC), 2015 WL 1780158, at *3 (S.D.N.Y. Apr. 20, 2015) (finding probable cause to arrest plaintiff for trespass where plaintiff was ordered to leave a city government office building and failed to do so); *Carpenter*, 984 F. Supp. 2d at 265 (finding probable cause to arrest plaintiffs for trespass where they refused to leave a bank branch that was open to the public after being asked to leave the premises by at least two bank employees).

While it is undisputed that Plaintiff entered Borough Hall, there is a genuine issue of material fact regarding whether Safi ordered Plaintiff to leave the premises. *See Rodriguez*, 2015 WL 1780158 at *3. Safi testifies that she told Plaintiff that she was on a "Do Not Admit" list and twice asked her to leave. (*See* Def.'s Decl., ECF No. 98 ¶¶ 7–10.) In contrast, Plaintiff testifies that Safi immediately approached and restrained her when she entered the building, saying nothing other than "[y]ou're not going home today" and "[y]ou're going to jail."  (*See* Pl.'s Dep., ECF No. 111 at 30:11–23; 33:6–20; 34:13–16; 36:9–25, 66:18–67:11.)  Plaintiff also testified that she did not learn that she was on the "Do Not Admit" list until after the Incident. (*Id.* at 156:9–157:9.)  In this summary judgment posture, the Court does not make

13

credibility determinations about conflicting testimony, "a function reserved for the jury." *Pukhovich v. City of New York*, No. 16-CV-1474 (KAM)(PK), 2018 WL 4688943, at *7 (E.D.N.Y. Sept. 27, 2018) (quoting *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010)). Instead—viewing this evidence in the light most favorable to Plaintiff—if a jury believed Plaintiff's version of the Incident, then Safi could not establish probable cause to arrest Plaintiff for trespass. *See Yorzinski*, 175 F. Supp. 3d at 77–78 (finding no probable cause existed to arrest plaintiff for trespass because he was never told to leave the location where he was arrested). Accordingly, Safi has not established her entitlement to summary judgment on Plaintiff's false arrest claim.

### 2. Qualified Immunity

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if [her] conduct did not violate clearly established rights or if it would have been objectively reasonable for the official to believe [her] conduct did not violate plaintiff's rights." *Harris v. O'Hare*, 770 F.3d 224, 239 (2d Cir. 2014), *as amended* (Nov. 24, 2014) (quoting *Reuland v. Hynes,* 460 F.3d 409, 419 (2d Cir. 2006)).

"Even where actual probable cause does not exist, police officers may be entitled to qualified immunity from a § 1983 false arrest claim [1] if their actions did not violate 'clearly established' rights or [2] if 'arguable probable cause' existed at the time of the arrest." *Guan*, 37 F.4th at 806. "A right is 'clearly established' if 'the contours of the right are sufficiently clear that a reasonable official would understand that what [she] is doing violates that right.'" *McKinney*, 49 F.4th at 738 (cleaned up) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010)). "'A police officer has arguable probable cause if either (a) it was

14

objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Guan*, 37 F.4th at 806 (quoting *Figueroa*, 825 F.3d at 100). "Because qualified immunity is an affirmative defense, defendants bear the burden of proving arguable probable cause." *Buckley v. Metro. Transp. Auth.*, No. 19-CV-1683 (JLC), 2021 WL 4236938, at *5 (S.D.N.Y. Sept. 17, 2021) (citing *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011)); *see also Drayton v. City of New York*, No. 17-CV-7091 (RRM)(RLM), 2020 WL 2615930, at *6 (E.D.N.Y. May 20, 2020) ("On summary judgment, it is defendants' burden to establish their entitlement to qualified immunity.") (citing *Sloley v. VanBramer*, 945 F.3d 30, 46 (2d Cir. 2019)).

Here, the Court cannot determine as a matter of law that Safi is entitled to qualified immunity for Plaintiff's false arrest claim. Safi asserts that arguable probable cause existed to arrest Plaintiff for trespass. (Def.'s Mem., ECF No. 101 at 8–9.) But her arguments assume the truth of her version of the Incident. The Court already determined that a material factual dispute exists as to whether Safi told Plaintiff to leave Borough Hall. As discussed, Safi testifies that she asked Plaintiff to leave Borough Hall and Plaintiff refused. (*See* Def.'s Decl., ECF No. 98 ¶¶ 7–10.) Plaintiff testifies that Safi did not ask her to leave, but instead immediately began choking her when Plaintiff entered the building. (*See* Pl.'s Dep., ECF No. 111 at 30:11–23; 33:6–20; 34:13–16; 36:9–25, 66:18–67:11.) If a factfinder were to believe Plaintiff's account, the Court finds that Safi would not have had arguable probable cause to arrest Plaintiff, and that Safi's conduct would have been objectively unreasonable as a matter of law. Because a material factual dispute exists as to whether Safi had arguable probable cause to arrest Plaintiff, Safi is not entitled to qualified immunity. *See Buckley*, 2021 WL 4236938, at *6 ("Here, Defendants have not demonstrated that summary judgment is

15

warranted on the question of qualified immunity in the context of Buckley's false arrest claim because . . . they have not demonstrated as a matter of law that there was arguable probable cause to arrest Buckley."); *Yorzinski*, 175 F. Supp. 3d at 82 ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.") (cleaned up).

Accordingly, the Court respectfully recommends that Safi's request for summary judgment on Plaintiff's false arrest claim should be denied.

### B. Excessive Force[11]

"A claim that a law enforcement officer used excessive force during a stop or arrest is 'analyzed under the Fourth Amendment.'" *Barnes v. Felix*, 605 U.S. ---, 145 S. Ct. 1353, 1357 (2025) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) and citing U.S. Const. amend. IV). "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 395). A police officer's use of force is excessive if "it is objectively unreasonable 'in light of the facts and circumstances confronting [her], without regard to [her] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir.), *supplemented*, 108 F. App'x 10 (2d Cir. 2004).

"Because the Fourth Amendment test of reasonableness is one of objective reasonableness, the inquiry is necessarily case and fact specific and requires balancing the

---

[11] Defendant does not argue she is entitled to qualified immunity on Plaintiff's excessive force claim. (*See* Mem., ECF No. 101 at 10–11.)

16

nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)). "In conducting that balancing, [the Court] [is] guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396 and *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). Given the fact-intensive nature of the reasonableness inquiry, "'granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.'" *Aghoghoubia v. Noel*, No. 17-CV-1927 (NGG) (SJB), 2020 WL 2489727, at *7 (E.D.N.Y. May 13, 2020) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)). "Nevertheless, summary judgment in an excessive force case is not precluded if the evidence, viewed in a light most favorable to the plaintiff, would support a directed verdict for the defendants." *Id.* (citing *Landy v. Irizzary*, 884 F. Supp. 788, 798 (S.D.N.Y. 1995)).

"[A] plaintiff must allege that [she] sustained an injury to maintain an excessive force claim. Such injury need not be severe, however." *B. v. City of New York*, No. 14-CV-1021 (KAM)(PK), 2016 WL 4530455, at *10 (E.D.N.Y. Aug. 29, 2016) (cleaned up); *see Hicks v. Vill. of Ossining*, No. 12-CV-6874 (VB), 2016 WL 345582, at *4 (S.D.N.Y. Jan. 27, 2016) ("Thus, a plaintiff generally must prove [she] sustained some injury to prevail on an excessive force claim."). Further, it is "well-established that psychological injuries may be a compensable component of excessive force cases." *Harrison v. Inc. Vill. of Freeport*, 498

17

F. Supp. 3d 378, 389 (E.D.N.Y. 2020) (quoting *Frego v. Kelsick*, No. 11-CV-5462 (SJF)(SIL), 2015 WL 4728922, at *9 (E.D.N.Y. Aug. 10, 2015)); *see Mills v. Fenger*, 216 F. App'x 7, 9 n.1 (2d Cir. 2006) (collecting cases).

Here, the sharply conflicting testimony in the record precludes summary judgment because the evidence, viewed in the light most favorable to Plaintiff, would not support a directed verdict for Safi. On Safi's account, Safi told Plaintiff that she was on a "Do Not Admit List" and twice asked her to leave Borough Hall. (Def.'s Decl., ECF No. 98 ¶¶ 6–10.) Plaintiff purportedly "began screaming and caused alarm to other staff members" and resisted Safi's attempt to escort her out of the building, necessitating the aide of other officers. (*See id.* ¶¶ 8, 10–12.) By contrast, Plaintiff testifies that Safi immediately choked her upon entering Borough Hall, using Plaintiff's scarf "like hanging a noose." (*See* Pl.'s Dep., ECF No. 111 at 36:9–37:9.) Plaintiff testifies that she did not attempt to resist the arrest, and her testimony reflects nothing that would suggest she was a danger to Safi's safety or others at any point during the Incident. (*See id.* at 67:10–68:3.) Additionally, while Safi claims that Plaintiff does not allege injury as a result of her interaction with Safi, Plaintiff testimony regarding psychological injuries and harm to her business prospects (*see id.* at 125:10–128:21), if believed, could support an excessive force claim. *See Harrison*, 498 F. Supp. 3d at 389; *see also Rizk v. City of New York*, 462 F. Supp. 3d 203, 224 (E.D.N.Y. 2020) ("Fourth Amendment excessive force claims cannot be dismissed solely for failure to establish more than de minimis injury").

In other words, there are material factual disputes regarding: (1) the nature and serious of Plaintiff's offense conduct, or if she committed any offense at all; (2) the extent to which Plaintiff posed a threat to the safety of others at Borough Hall before Safi initiated the arrest

or afterward; and (3) whether Plaintiff resisted arrest or attempted to flee. *See Tracy*, 623 F.3d at 96. Because a rational factfinder could conclude that Safi's use of force was "objectively unreasonable in light of the facts and circumstances confronting [her]," summary judgment is not appropriate. *Maxwell*, 380 F.3d at 108; *see Aghoghoubia*, 2020 WL 2489727, at *7.

Accordingly, the Court respectfully recommends that Safi's motion for summary judgment on Plaintiff's excessive force claim should be denied.

## IV.     CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendant Troy Ann Safi's motion for summary judgment (ECF No. 96) should be **denied**.

A copy of this Report and Recommendation is being served on all parties via ECF: to counsel for Defendant and to *pro se* Plaintiff because she consented to electronic notification of this Report and Recommendation. (ECF No. 69.) Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Gujarati. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 4, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge